UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SCHWARTZ,

              Plaintiff,              Case No. 4:18-cv-12190
                                            District Judge Matthew F. Leitman
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE
COMMISSIONER'S DECISION**

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

       Plaintiff, Kimberly Schwartz, brings this action under 42 U.S.C. § 1383(3)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for Supplemental Security Income

(SSI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE 11), the Commissioner's cross-motion for summary judgment (DE 12), Plaintiff's reply (DE 14) and the administrative record (DE 9).

### A. Background and Administrative History

Plaintiff alleges her disability began on May 1, 2003, at the age of 36 (R. at 154); however, as recognized by the ALJ and the parties here, regardless of her alleged onset date, the earliest Plaintiff could be found disabled for purposes of SSI is August 2015, the month after she applied. *See* 20 C.F.R. § 416.330(a). The ALJ therefore considered whether Plaintiff was disabled only as of July 30, 2015, her application date. (R. at 16, 31.) In her disability report, she lists manic bi-polar disorder, post-traumatic stress disorder (PTSD), anxiety, depression, high blood pressure, acute chronic respiratory failure, a bad right shoulder, a bulging disc in her back, and a bad right knee as limiting her ability to work. (R. at 201.) Her application was denied in May 31, 2016. (R. at 121.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 132-134.) On November 8, 2017, ALJ Bill Laskaris held a video hearing, at which Plaintiff and a vocational expert (VE), Timothy M. Bobrowski, testified. (R. at 56-93.) On March 13, 2018, ALJ Laskaris issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-35.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 9.)  However, on May 23, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Laskaris's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 13, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 508 pages of medical records, which were available to the ALJ at the time of his March 13, 2018 decision.  (R. at 262-770 [Exhibits 1F-19F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 30, 2015, the application date.  (R. at 16.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease, status post fracture of greater tuberosity of humerus, hill sachs deformity, degenerative disc disease, chronic obstructive pulmonary disease (COPD), bipolar disorder, attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder, panic disorder, social anxiety disorder, and alcohol use dependence, in remission.  (*Id*. at 16-17.)  At **Step 3**, the ALJ found that

3

Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 17-21.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work…except she could occasionally climb ladders, ropes, and scaffolds as well as occasionally climb ramps and stairs [*i.e.*, *exertional limitations*].  She could occasionally balance, stoop, kneel, crouch, and crawl [*i.e.*, *postural limitations*]. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, or humidity. She should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

In his opinion, ALJ Laskaris recognized that Plaintiff previously filed an application for SSI benefits on June 15, 2005, alleging disability beginning May 5, 2004, which was denied by the ALJ on September 20, 2005, but then found that he is not bound to that prior decision under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) because there is new and material evidence justifying a change in Plaintiff's RFC. (R. at 13-14.) The Sixth Circuit recently modified the *Drummond* holding in *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which holds that principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Having determined that he was not bound by any prior decision, the ALJ here gave the evidence in the record a "fresh look," thus satisfying *Early. See Kimball v. Comm'r of Soc. Sec.*, No. 17-12659, 2018 WL 4102845, at *5 n.4 (E.D. Mich. Aug. 7, 2018) (finding *Early* did not change the Court's analysis of pre-*Early* ALJ decision because the ALJ had concluded she was not bound by the previous RFC due to new and material evidence), *report and recommendation adopted*, 2018 WL 4095081 (E.D. Mich. Aug. 28, 2018).

[*i.e.*, *environmental limitations*]. The claimant's work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, work place changes. She should have only brief and superficial interaction with the public, co-workers, and supervisors [*i.e.*, *mental health limitations*].

(*Id*. at 21-29.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 29-30.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as routing clerk, mail sorter, and library assistant.  (*Id*. at 30-31.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 30, 2015.  (*Id*. at 31.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges three claims of error: (1) the ALJ erred in assigning little

weight to the opinions of the orthopedic consulting examiner Dr. Scott Lazzara; (2)

the ALJ erred in determining that Plaintiff does not require use of a cane; and (3)

the ALJ erred in discrediting the opinions of the consulting psychological examiner

Dr. Gayle Oliver-Brannon, Ph.D. (DE 11.)[2] The Commissioner contends that

substantial evidence supports the ALJ's RFC determination, that he adequately

considered and evaluated the medical consultant's and psychological consultant's

opinions, and he supportably determined that Plaintiff did not require a cane. (DE

12.)

### 1.    Dr. Scott Lazzara's opinions

Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions

of the consultative examiner, Dr. Scott Lazzara, M.D. (DE 11 at 12.) For starters,

this characterization is incorrect: the ALJ assigned Dr. Lazzara's opinions "some

---

[2] My Practice Guidelines for Social Security cases (*see* www.mied.uscourts.gov)
and E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs.") were not followed with
respect to specifically identifying issues on appeal in an "Issues Presented" page at
the beginning of the brief. In addition, Plaintiff's motion and brief, including the
footnotes, were not in 14 point font as required by E.D. Mich. LR 5.1(a)(3).
Plaintiff's counsel is forewarned that future non-complying briefs run the risk of
being stricken

weight," as conceded a paragraph later in Plaintiff's brief. (*Id.*; R. at 27.)  The Commissioner contends that the ALJ adequately considered Dr. Lazzara's opinion and supportably concluded that Plaintiff could perform a reduced range of light work.  (DE 12 at 9-12.)

Dr. Lazzara performed an independent orthopedic consultative evaluation of Plaintiff on April 11, 2016.  (R. at 551-58.)  Dr. Lazzara noted on examination that Plaintiff "had mild difficulty getting on and off the examination table, moderate difficulty heel and toe walking, moderate difficulty squatting, moderate difficulty standing 3 seconds on her right foot and mild difficulty standing 3 seconds on her left foot due to pain in the right knee," but otherwise demonstrated, at most, a slight decrease in strength, range of motion, sensation and reflexes in her dorsolumbar spine, shoulders, and knees.  (*Id.* at 555-57.)  Plaintiff was noted to have a "shuffling gait" without the use of an assistive device, and Dr. Lazzara stated that "a cane would be helpful for pain control but is not required at present," and that "Romberg testing" (testing to examine a balance disturbance) was negative.  (*Id.* at 557.)  In addition, Dr. Lazzara completed a checklist form indicating that Plaintiff was able to perform each of the listed functions (e.g., sitting, standing, carrying, pushing, pulling, squatting, climbing stairs, and various manipulative functions), but in the comments section indicated that Plaintiff required some "assistance" with stooping, squatting, and climbing stairs, or could

only perform these functions "occasionally," and that she could carry, push or pull less than five pounds with her right arm and less than 10 pounds with her left.  (R. at 551.)

The ALJ discussed Dr. Lazzara's consultative examination findings and the records of Plaintiff's medical providers related to Plaintiff's alleged upper back and upper extremity symptoms, and as related to Plaintiff's alleged lower back and lower extremity symptoms.  (R. at 23-24.)  Specifically, the ALJ noted that while Dr. Lazzara reported that Plaintiff was only able to complete shoulder abduction and forward elevation to 90 degrees (out of a normal 150 degrees) and demonstrated decreased grip strength of her right hand, he otherwise noted that she had normal or only slightly diminished strength, range of motion, reflexes, coordination, sensation and psychomotor control in her cervical spine, neck, shoulders, elbows and hands (R. 23, citing R. at 551-56), and that Plaintiff's medical providers similarly observed that Plaintiff had "appropriate or slightly decreased strength, range of motion, and overall neurologic and musculoskeletal functioning in her upper back and upper extremities throughout her relevant period of disability."  (R. at 23, citing R. at 325-27, 337, 361, 418-19, 451, 482-84, 586, 643, 652, 659-62.)  The ALJ further noted that, similar to Dr. Lazzara's findings regarding Plaintiff's lower back and lower extremities listed above, Plaintiff's "various treatment providers repeatedly observed that the claimant had normal or

only slightly diminished strength, coordination, reflexes, and range of motion of her lower back and bilateral lower extremities throughout her relevant period of alleged disability" and that "there is little evidence indicating that the claimant suffered from sustained loss of balance, gait dysfunction, or diminished of [sic] ambulatory endurance after her supplemental security income application date beyond acute injuries."  (R. at 24, citing R. at 322-25, 424, 433, 450, 483, 489-92, 551-57, 643, 652-62.)  And, as discussed more fully below, the ALJ noted Dr. Lazzara's statement that "a cane would be helpful for pain control" but "is not required at present," and determined that there is no indication that a cane is considered medically necessary for ambulation or balancing.  (R. at 24.)  In consideration of the above, the ALJ did not reject Dr. Lazzara's opinion, but rather gave it "some weight," stating:

> Dr. Lazzara's opinions are somewhat vague in nature and offer little help in [] determining the claimant's specific residual functional capacity.  However, Dr. Lazzara performed a thorough physical evaluation of the claimant and generally provided opinions that are consistent with the record as a whole.

(R. at 27.)

Plaintiff broadly disagrees that Dr. Lazzara's opinion is "vague" and contends that the doctor completed a form given to him by the Defendant that addressed Plaintiff's functional limitations.  (DE 11 at 12.)  Plaintiff further argues that, given that the ALJ acknowledged that Dr. Lazzara's examination of Plaintiff

was "thorough" and that he "generally provided opinions that are consistent with the record as a whole" (R. at 27), the ALJ should have adopted that opinion and limited Plaintiff to sedentary work, which would have resulting in a finding of disability. (DE 11 at 13.) I disagree and find that the ALJ's decision is supported by substantial evidence.

First, in considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and consider what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). While the ALJ was required to consider every medical opinion of record, 20 C.F.R. § 404.1527, because Dr. Lazzara was not a treating physician, the ALJ was not required to defer to his opinion. Instead, "in weighing a consultative examiner's opinion, and [ALJ] must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Neal v. Comm'r of Soc. Sec.*, No. 17-13403, 2018 WL 7575188, at *4 (E.D. Mich. Dec. 10, 2018) (citation omitted), *report and recommendation adopted by* 2019 WL 1167748 (E.D. Mich. Mar. 12, 2019). Those factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. § 404.1527(c)(2)-(6). But there is no rule requiring an

articulation of each of these factors, *see Albaugh v. Comm'r of Soc. Sec.*, No. 14-cv-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015), and the ALJ was not required to provide "good reasons" for departing from that opinion.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only *treating* sources.").

I find, reviewing the ALJ's decision as a whole, that the ALJ sufficiently considered Dr. Lazzara's opinion and that substantial evidence supports his determination that Dr. Lazzara's opinion was entitled to "some weight."  As an independent examiner, Dr. Lazzara examined Plaintiff only once and they did not have an ongoing treatment relationship, and the ALJ's criticism of Dr. Lazzara's opinion as "vague" goes to the consistency and supportability of that opinion.  *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (an ALJ properly rejected portions of a non-treating physician's opinion he found "vague and not defined").  The ALJ clearly read Dr. Lazzara's opinion and adopted many limitations consistent with that opinion (*i.e.* limitations in climbing, stooping, kneeling, etc.) and discussed the limitations he did not adopt.  The ALJ noted that while Dr. Lazzara reported that Plaintiff was only able to complete shoulder abduction and forward elevation to 90 degrees (out of a normal 150 degrees) and demonstrated decreased grip strength of her right hand, he otherwise noted that she had normal or only slightly diminished strength, range of motion, reflexes,

coordination, sensation and psychomotor control in her cervical spine, neck, shoulders, elbows and hands (R. 23, citing R. at 551-56), and that Plaintiff's health providers similarly observed that Plaintiff had "appropriate or slightly decreased strength, range of motion, and overall neurologic and musculoskeletal functioning in her upper back and upper extremities throughout her relevant period of disability."  (R. at 23, citing R. at 325-27, 337, 361, 418-19, 451, 482-84, 586, 643, 652, 659-62.)

The ALJ further noted that Plaintiff's "various treatment providers repeatedly observed that the claimant had normal or only slightly diminished strength, coordination, reflexes, and range of motion of her lower back and bilateral lower extremities throughout her relevant period of alleged disability" and that "there is little evidence indicating that the claimant suffered from sustained loss of balance, gait dysfunction, or diminished of [sic] ambulatory endurance after her supplemental security income application date beyond acute injuries."  (R. at 24, citing R. at 322-25, 424, 433, 450, 483, 489-92, 551-57, 643, 652-62.)  The ALJ's determination that Plaintiff could perform a reduced range of light work is further supported by the opinion of the state agency reviewing physician, Dr. William Jackson, who reviewed the record evidence, including Dr. Lazzara's assessment, and concluded that Plaintiff was capable of performing light work with only occasional postural movements and limitation in exposure to hazards.  (R. at

28, 115-17.)  The ALJ gave this opinion "less weight," disagreeing with Dr.

Jackson's conclusion that Plaintiff "[n]eeds assistive device to reduce pain."  (*Id.*),

instead ultimately agreeing with Dr. Lazzara's opinion that a cane "is not required

at present." (R. at 28, 557.)

The RFC determination is reserved to the Commissioner.  *See Shepard v.

Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) ("An RFC is an

'administrative finding,' and the final responsibility for determining an

individual's RFC is reserved to the Commissioner.").  The ALJ was under no

obligation to adopt the consulting examining physician's opinion in full.  *See*

*Harris v. Comm'r of Soc. Sec.*, No. 1:13-CV-00260, 2014 WL 346287, at *11

(N.D. Ohio Jan. 30, 2014) ("[E]ven where an ALJ provides 'great weight' to an

opinion, an ALJ is not necessarily required to adopt wholesale limitations

contained therein.").  Nor, as explained above, was the ALJ required to explain

why he did not adopt the opinions in full.  *See, e.g., Martin v. Comm'r of Soc. Sec.*,

658 F. App'x 255, 259 (6th Cir. 2016).  Rather, the ALJ is responsible for

weighing opinion evidence, and while he may not simply ignore the opinions of

non-treating sources, as long as the record contains substantial evidence supporting

the ALJ's evaluation of such an opinion, that evaluation cannot be second-guessed

by a reviewing court.  *See Tate v. Comm'r of Soc. Sec.*, No. 2:13-cv-11473, 2014

WL 4536929, at *19 (E.D. Mich. Sept. 11, 2014) (Hluchaniuk, MJ), *report and recommendation adopted at id.* at *1 (Michelson, J.).

Here, the record does contain substantial evidence supporting the ALJ's evaluation of Dr. Lazzara's opinion.  Dr. Lazzara is not a treating source and the ALJ evaluated his opinion accordingly.   A review of the ALJ's opinion reveals that it amply supports the ALJ's finding affording Dr. Lazzara's opinion "some weight," and Plaintiff's claim of error should be denied.

## 2.    Cane use

Plaintiff argues that the ALJ erred in determining that she does not require the use of a cane.  She contends that her treating physician, Dr. Okey, prescribed a cane, that the state agency reviewing physician opined that she needed an assistive device to reduce pain, and that Dr. Lazzara opined that a cane "would be helpful for pain control," but that she did not absolutely require one yet.  (DE 11 at 13, citing R. at 116, 552, 557, 582-83.)  Plaintiff contends that this omission cannot be deemed harmless error because use of a cane would limit her to sedentary work, causing her to be found disabled under the Medical-Vocational Grids.  (DE 11 at 13.)  The Commissioner responds that the ALJ supportably determine that Plaintiff did not require a cane.  (DE 12 at 12.)  I agree.

Although it is true that a cane was prescribed or recommended by three doctors as Plaintiff contends (DE 11 at 13), Plaintiff fails to establish that the ALJ

committed reversible error by not including use of a cane in Plaintiff's RFC.

Social Security Ruling 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device *to aid in walking or standing, and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)*

1996 WL 374185, at *7 (July 2, 1996) (emphasis added).

In this case, the ALJ recognized that Plaintiff was prescribed a cane in May 2016 due to her reports of lower back pain, but properly noted that "there is no indication that it [was] considered medically necessary *for ambulation or balancing*." (R. at 24.) *See Salem v. Colvin*, No. 14-cv-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding that ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane."). In fact, the ALJ found earlier in his decision that the evidence does not demonstrate that Plaintiff has "the degree of difficulty in ambulating as defined in 1.00B2b" in finding that Plaintiff's impairments did not meet or equal Listing 1.02 (R. at 18), and Plaintiff does not challenged that finding.

The ALJ further noted that the doctors who prescribed the cane stated, in December 2016, that Plaintiff's "[p]ain [is] stable on med. Does not request more. Except she has used her moms [sic] Lidoderm patch on her back and finds it very

helpful." (R. at 24, citing R. at 652.) Plaintiff argues that this note is seven months after the cane was prescribed and "is irrelevant." (DE 11 at 14.) However, as Defendant points out in her response brief, one month prior to that note, in November 2016, the cane prescription (and Plaintiff's prescription for a knee brace) *was discontinued*, with the following explanation: "course complete." (R. at 654.) Accordingly, even though the ALJ did not note in his opinion that the cane prescription had been discontinued, this December 2016 treatment note, one month after the cane prescription was discontinued, stating that Plaintiff's pain is "stable on med," is relevant to Plaintiff's limitations. [3]

---

[3] Defendant argues that this was a temporary, 6-month prescription for a cane, and thus is insufficient to establish that the ALJ should have included a permanent provision for a cane in the RFC. *Cf. Ortiz-Rosando v. Comm'r of Soc Sec.*, 12 F. App'x 349, 352 (6th Cir. 2001) (ALJ not required to include limitation in RFC because it "did not meet the twelve-month duration requirement."). Plaintiff argues in her reply brief that the ALJ "missed" this record and did not address it in his decision and thus Defendant's reliance on it now constitutes forbidden *post-hoc* reasoning. (DE 14 at 8.) I agree that the ALJ did not expressly rely on the prescription of a cane for less than 12 months as a basis for not including that limitation in the RFC, but "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006), and this Court can look at any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The discontinuation of the cane prescription, followed by a doctor's report one month later that Plaintiff's pain is "stable on med," supports the ALJ's determination that Plaintiff did not require a cane.

In addition, Dr. Lazzara merely opined that a cane would be "helpful for pain control" but expressly stated that it was "not required at present."  (R. at 557.) Dr. Lazzara found that despite "moderate" difficulty performing some maneuvers such as heel and toe walking, Plaintiff had only slightly diminished range of motion in the lumber spine and lower extremities, 4/5 motor strength in the right knee with a "relatively stable" left knee, normal muscle tone and sensation, and Romberg testing (for balance disturbance) was negative.  (R. at 555-57.)  Thus, Dr. Lazzara's opinion does not require a finding that Plaintiff needed a cane to work. *See Leach v. Comm'r of Soc. Sec.*, No. 2:17-cv-12821, 2018 WL 4906619, at *3 (E.D. Mich. Aug. 17, 2018) (finding Dr. Lazzara's opinion that "[t]he use of a cane for pain control and on even ground for balance would be helpful" did not require a finding that "Plaintiff needed a cane for daily activities on level ground"), *report and recommendation adopted by* 2018 WL 4346913 (E.D. Mich. Sept. 12, 2018). And, although the state agency reviewing physician opined that Plaintiff "needs [an] assistive device to reduce pain," the ALJ explained that he rejected this portion of the opinion because "the medical evidence of record as a whole fails to show sustained difficulty with balance, gait movements, or ambulatory endurance necessitating the need for an assistive device."  (R. at 28).  Contrary to the Plaintiff's assertion that the ALJ was impermissibly "playing doctor" because he disagreed that a cane was required, the ALJ was not precluded from assessing the

record evidence and determining an RFC that differed from that of the medical opinions of record.  *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir.  2010) (explaining that an ALJ does not necessarily "improperly assume the role of a medical expert" simply because he does not rely on any medical opinion for the RFC.).  Further, the ALJ was not required to "compare the consistency of treating and examining physicians' opinions to each other" in reaching his RFC determination.  *See id.* at 441-42.

Tellingly, while Plaintiff criticizes the ALJ's reliance on some records before her onset date or that do not contain a "meaningful assessment of her gait and lower extremities," (DE 11 at 14), she has not identified *any* positive record evidence of gait or balance abnormalities justifying the need for a cane "to aid in walking and standing" beyond Dr. Okey's cursory prescription for a quad cane from May through November 2016 for knee osteoarthritis, and Drs. Lazzara's and Jackson's recommendation to use a cane "for pain control" or "to reduce pain.". (DE 11 at 8, 13 citing R. at 116, 557, 582-83.)[4] Plaintiff bears the burden of proof at Steps 1-4 of the sequential evaluation, including proving his RFC.  *Walters v.*

---

[4] It may be worth noting at this juncture that an RFC need not be premised on the claimant being pain-free.  *See Luxton v. Comm'r of Soc. Sec.*, No. 1:15-CV-13758, 2016 WL 6806369, at *12 (E.D. Mich. Oct. 26, 2016) (Patti, M.J.) (citing *Brown v. Comm'r of Soc. Sec.*, No. 1:13-CV-99, 2015 WL 404368, at *7 (W.D. Mich. Jan. 29, 2015)), *report and recommendation adopted*,  2016 WL 6777839 (E.D. Mich. Nov. 16, 2016) (Ludington, J.).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff points to x-ray and MRI findings showing "abnormalities" (DE 11 at 14, citing R. at 464, 703-04), but the ALJ expressly considered these diagnostic records and noted that, in response, Plaintiff's treating providers relied upon conservative treatment modalities to address these issues, such as "use of an elastic knee brace, narcotic analgesics and medical monitoring as needed."  (R. at 23-24.)  The ALJ reviewed the record evidence as a whole and found that "the claimant's clinical observation notes fail to demonstrate disabling lower back or lower extremity pathologies," and found "little evidence indicating that the claimant suffered from a sustained loss of balance, gait dysfunction, or diminished of [sic] ambulatory endurance after her [SSI] application date beyond acute injuries."  (R at 24.)  Indeed, the record evidence generally reflects that Plaintiff was observed with a "normal" or "steady" gait (R. at 322, 324, 325, 424, 433, 450, 483, 484, 490, 492), and musculoskeletal examinations were general described as "normal."  (R. at 580-81, 641, 643, 646, 650, 655, 659.)  The ALJ was entitled to – and did – consider the "evidence of record as a whole" as to the need for a cane. (R. at 28.)

Accordingly, the ALJ's finding that a cane was not required for Plaintiff's RFC is supported by substantial evidence in the record and Plaintiff's claim of error is denied.

### 3.    Dr. Oliver-Brannon's opinion

Plaintiff argues that the ALJ erred in "discrediting" the opinion of the consulting psychologist, Dr. Gayle Oliver-Brannon, Ph.D. (DE 11 at 17-18.) The Commissioner responds that the ALJ properly evaluated Dr. Oliver-Brannon's opinion based on her May 2016 evaluation. (DE 12 at 17-21.)

Dr. Oliver-Brannon conducted an independent psychological consultative evaluation of Plaintiff in May 2016, and noted on examination that Plaintiff is in contact with reality, her attitude is fair to poor, her judgment and insight are "limited noting head trauma and will second guess her decisions," her mood was low, her thought process was not goal oriented, and she did not seem to exaggerate or minimize her symptoms. (R. at 565.) Dr. Oliver-Brannon further noted that Plaintiff's speech was clear, logical and spontaneous and her affect was labile, and that she otherwise had normal or only slightly diminished orientation, immediate memory, past memory, fund of information, ability to perform simple arithmetic, and ability to discern similarities and differences. (*Id.* at 565-66.) Dr. Oliver-Brannon assessed Plaintiff's prognosis as "[g]uarded to poor," and diagnosed her with multiple psychological pathologies, including Bipolar I disorder with psychotic symptoms, PTSD, generalized anxiety disorder, panic disorder, and social anxiety disorder, as well as alcohol use disorder in sustained remission, and opined that she "suspect[s] the pressure of employment would be a major factor in decompensation on [Plaintiff's] part[.]" (*Id.*) The ALJ gave Dr. Oliver-Brannon's

opinion "less weight," noting that she based her diagnoses and opinions primarily on Plaintiff's recount of her symptoms and that her opinion was based on <u>one encounter</u> with Plaintiff and thus "cannot reasonably represent [Plaintiff's] ability to perform work activities throughout the entire period of alleged disability." (R. at 27-28.)

Plaintiff contends that Dr. Oliver-Brannon properly based her opinion on Plaintiff's report of her symptoms, questioning "what else does the ALJ expect a psychologist to base her assessment on besides Plaintiff's report?" (DE 11 at 17.) However, an ALJ is permitted to discount opinions supported primarily by subjective rather than objective data. *See Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990) (affirming where ALJ rejected psychiatrist's opinion that was based mostly on claimant's subjective complaints); *see also Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (the ALJ properly noted, in affording the treating psychologist's opinion little weight, that the psychologist based her opinion mainly on plaintiff's subjective reports of his symptoms and limitations).

But that is not the only reason the ALJ gave for giving Dr. Oliver-Brannon's opinion less weight. He also noted that she based that assessment on a single visit, and explained earlier in his decision that he found Dr. Oliver-Brannon's opinion inconsistent with the record evidence and Plaintiff's past treatment history. *See Inman v. Astrue*, No. 1:11-cv-838, 2013 WL 64863, at *5

(S.D. Ohio Jan. 4, 2013) (ALJ properly rejected psychologist's opinion because it was based on plaintiff's subjective complaints, was not based on a longitudinal record of the psychologist's clinical observations of plaintiff, and the ALJ articulated other reasons to question the findings), *report and recommendation adopted by* 2013 WL 249717 (S.D. Ohio Jan. 23, 2013). Specifically, the ALJ here found that Plaintiff's "mental health treatment notes do not show the level of mental dysfunction as purported in Dr. Oliver-Brannon's" assessment. (R. at 26.) He reviewed the record evidence and concluded that Plaintiff's care providers focused on conservative treatment consisting of "counseling, pharmacology and abstinence from substance abuse," and the treatment providers generally characterized Plaintiff's psychiatric symptoms as "stable" or "improved" due to medication and counseling. (R. at 26, citing R. at 283-302, 469-74, 569-74, 590-639, 648, 652, 717.) The ALJ went on to note that Plaintiff's various mental health providers noted that Plaintiff generally demonstrated normal communicative capabilities, displayed appropriate hygiene and grooming, and was observed as having normal behavior, thought processes, thought content, judgment, memory, insight, concentration, or overall psychiatric functioning. (R at 19-20, 26, citing R. at 289, 306, 310, 324, 420, 429-35, 461-62, 491-92, 586, 599-603, 605-06, 610-18, 627-28, 634-35, 659, 719-27.) In addition, the ALJ also relied on Plaintiff's daily activities, including ability to attend to her personal care tasks, maintain

meaningful family relationships, complete household chores, care for her grandchildren and function independently.  (R. at 19-20, 65-71, 215-20, 564-65, 590-91, 609, 613, 617.)  All of these reasons provide ample support for the ALJ's determination to afford Dr. Oliver-Brannon's restrictive opinion less weight.

Plaintiff counters that Dr. Oliver-Brannon's opinion is consistent with Plaintiff's mental health providers, Alice Moon, P.A and Lisa Schultz, LLPC, in that Moon also expressed concerns about Plaintiff decompensating if exposed to the pressure of employment, and Schultz, who counseled Plaintiff regarding substance abuse, reported that Plaintiff has "manic episodes which make it challenging for her to focus during counseling sessions," which requires "constant redirection."  (DE 11 at 17-18, citing R. at 575, 770.)  Plaintiff acknowledges that these treaters are not considered "acceptable medical sources" under 20 C.F.R. 404.1502, but contends they can still be considered and are consistent with Dr. Oliver-Brannon's opinion.  (DE 11 at 18.)

However, as explained above, the ALJ was not required to "compare the consistency of treating and examining physicians' opinions to each other" in reaching his RFC determination.  *See Coldiron*, 391 F. App'x. at 441-42.  And, as Plaintiff properly recognizes, because neither Moon nor Schultz are deemed "acceptable medical sources," their opinions are not entitled to any special deference.  An "other source" may provide probative evidence but is due no

special deference, and the social security regulations require only that information from "other sources" be "considered."  *See Erbland v. Comm'r of Soc. Sec.*, No. 1:13-CV-93, 2015 WL 5578020, at *3 (W.D. Mich. Sept. 22, 2015) (citing 20 C.F.R. §§ 404.1513, 416.913 (effective Sept. 3, 2013 – Mar. 26, 2017)).  This is not a demanding standard and was easily met here.  The ALJ expressly reviewed and analyzed the opinions of both Moon and Schultz.  He noted that the "record shows very little clinical observation notes from Ms. Moon," "does not support the extent of Ms. Moon's purported limitations," and "does not contain evidence of four or more episodes of decompensation for any twelve-month period," and thus afforded Moon's opinion "little weight."  (R. at 27.)  The ALJ "credit[ed] Ms. Schultz's longitudinal treatment history with [Plaintiff]" but found that "her statements are simply far too vague or cursory to offer much assistance in determining" Plaintiff's RFC, and thus afforded her opinion "some weight."  (R. at 26-27.)  Plaintiff has failed to challenge the ALJ's reasons for discounting these two opinions, and thus has waived any such argument.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e  limit our consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal.").

A review of the ALJ's opinion reveals that it amply supports the ALJ's finding affording Dr. Oliver-Brannon's opinion less weight, and Plaintiff's claim of error should be denied.

### F.    Conclusion

The ALJ's decision is supported by substantial evidence, and no legal error which would lead to a different result has been shown.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 1, 2019          s/*Anthony P. Patti*
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE